# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48059-0-II |
| Respondent, | |
| v. | |
| SHAWN CURTIS BRANDENBURG, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Shawn Curtis Brandenburg appeals his jury trial conviction and sentence for first degree molestation of L.B.,[1] and he appeals his conviction for second degree molestation of E.W.  We hold that (1) the prosecutor did not commit misconduct, (2) counsel was not ineffective, (3) the reasonable doubt instruction was proper, and (4) the "Community Protection Act" (CPA) does not violate the single-subject or subject-in-title rules.  Accordingly, we affirm Brandenburg's convictions and sentence.

---

[1] We use initials instead of names for victims of sex crimes to protect their privacy.  Gen. Ord. of 2011-1 of Division II, *In Re The Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.).

## FACTS

### I. BACKGROUND FACTS

In May 2012, 12-year-old L.B. and another girl, A.H., had a sleepover at their friend E.W.'s house. E.W.'s stepfather, Brandenburg, and mother, Gina Brandenburg, were also in the house. A few weeks later, L.B. told her mother that Brandenburg had taken off L.B.'s top and rubbed her breasts while she was sleeping at E.W.'s house that night. L.B.'s mother called the police. Officer Brian Cassidy responded and interviewed L.B. and E.W., who was also present. L.B. disclosed a sex offense to Officer Cassidy, and E.W. disclosed that Brandenburg had taken off her shirt while she slept when she was 7 years old.

After Officer Cassidy interviewed E.W. and L.B., Detective Chris Ivanovich was assigned to investigate the case. When Detective Ivanovich interviewed E.W., she disclosed that Brandenburg had sexually abused her not just once, but up to "'five or six'" times in 2007. 1 Report of Proceedings (RP) at 76. Police arrested Brandenburg, and the State charged him with first degree child molestation and first degree rape of E.W. and second degree child molestation of L.B.

### II. TRIAL

#### A. TESTIMONY

1. E.W.'S AND L.B.'S TESTIMONY

E.W. testified that on at least three occasions in 2007, when she was seven years old, Brandenburg had come into the room where E.W. was sleeping and sexually abused her. One night, Brandenburg touched the outside of her vaginal area. Another night, he rubbed her breasts under her clothes. On a third night, E.W. "felt something go inside [her] mouth" while her eyes

2

were shut. 1 RP at 49. There were several other instances of sexual abuse that happened afterward that E.W. did not remember as clearly, but the abuse stopped after E.W. told her mother, Gina.[2] Gina did not call the police or Child Protective Services.

E.W. spoke to Detective Ivanovich nearly a year after the sleepover. E.W. told Detective Ivanovich about Brandenburg sexually abusing her several times in 2007, although she did not tell Detective Ivanovich that Brandenburg had put something in her mouth. E.W. was reluctant to speak to the police because she did not want Brandenburg, who supported the family, to go to prison. E.W. explained that she was "terrified," and when asked at trial, she agreed that she had tried to minimize the details of the sexual abuse. 1 RP at 108.

E.W. also testified that on the night of the sleepover she woke up to the sound of L.B. crying. Gina came downstairs and stayed with L.B. until L.B. fell asleep. The next morning, L.B. told E.W., Gina, and A.H. that Brandenburg had taken off her bikini top and touched her breasts during the night. E.W. thought, however, that L.B. had taken off her bikini top before she fell asleep.

L.B. testified that on the night of the sleepover she had fallen asleep wearing a buttoned-up shirt over a bikini top. She awoke to Brandenburg rubbing her left breast in a circular motion. Her shirt had been unbuttoned and her bikini top taken off. L.B. told her mother about the molestation a few weeks later.

---

[2] For clarity, we refer to Gina Brandenburg by her first name.

2.      OFFICER CASSIDY'S AND DETECTIVE IVANOVICH'S TESTIMONY

Officer Cassidy testified that he had responded to the call about a sex offense and had spoken to L.B.'s mother, L.B, and E.W.  Officer Cassidy answered, "Yes" when asked if L.B. had disclosed a sex offense to him.  2 RP at 212.  Officer Cassidy indicated that E.W. told him something "concerning"—that Brandenburg had taken her shirt off once while she slept.  2 RP at 220.  But E.W. told Officer Cassidy that Brandenburg had never sexually abused her again and provided no other information.  Based on E.W.'s statement, Officer Cassidy did not believe he had probable cause to arrest Brandenburg.

Detective Ivanovich interviewed E.W., and she disclosed to him that Brandenburg had touched her.  Detective Ivanovich testified that a forensic interviewer had spoken with L.B., who made some statements against Brandenburg.

Detective Ivanovich further testified that in the 8 years that he had been a detective, he had conducted "well over a hundred" formal forensic interviews of children under 10 years old.  1 RP at 156.  Detective Ivanovich testified that in those interviews, not every child who had been abused disclosed all of the sexual abuse.  When the State asked why children did not disclose all the abuse, Brandenburg objected because the State's question prompted Detective Ivanovich to speculate.  Detective Ivanovich explained that abused children did not disclose all at once but, in his experience, were more likely to disclose when they felt safe.  But Brandenburg's renewed objection for speculation and lack of foundation cut short any further explanation by Detective Ivanovich.

4

3.    DEFENSE TESTIMONY

Gina testified that E.W. had not told her in 2007 that Brandenburg had sexually abused her. Gina testified that L.B. and E.W. had awoken her on the night of the sleepover because L.B. was scared that she had seen "'a ghost.'" 2 RP at 240. Gina claimed that she came downstairs and sat with L.B., E.W., and A.H. for approximately two hours. Gina did not learn about the molestation until the next day when E.W. told Gina. Gina did not believe L.B. because Brandenburg had been with Gina the entire night and because Gina had seen L.B. take off her bikini top before L.B. fell asleep. According to Gina, E.W. did not reveal that Brandenburg had sexually abused E.W. until after the police questioned L.B. and E.W. in 2012.[3]

The third girl at the sleepover, A.H., testified that she had woken up on the night of the sleepover to L.B. and E.W. talking. L.B. was wearing all her clothes, including the bikini top, but L.B. told A.H. that L.B. had woken up in the night with all her clothes taken off and someone standing over her. L.B. said that maybe the person had been Brandenburg, but she said nothing about the person touching her. Gina had not come downstairs.

B. JURY INSTRUCTIONS

The trial court's instructions to the jury included a reasonable doubt instruction that stated in part,

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence

---

[3] Gina also testified about Brandenburg's employment history and that he was the sole source of financial support for the family from 2013 to 2015.

or lack of evidence. *If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.*[4]

Clerk's Papers (CP) at 21 (emphasis added). This instruction was taken verbatim from WPIC 4.01.

### C. PROSECUTOR'S CLOSING ARGUMENT AND JURY VERDICT

During closing argument, the prosecutor discussed reasonable doubt and read from the jury instruction defining a reasonable doubt. She then argued, "If you walk into that jury room and say I believe that these things happened to these little girls, I submit to you that you have an abiding belief, and you have a duty to return verdicts of guilty." 2 RP at 332. She emphasized that the State had the burden of proof and that the defendant did not have to prove anything. Brandenburg was "presumed innocent, unless and until you believe [E.W. and L.B.], and if you believe them, you're satisfied beyond a reasonable doubt." 2 RP at 333.

While she spoke, the prosecutor played a PowerPoint presentation for the jury.[5] After explaining reasonable doubt, the prosecutor reminded the jury that E.W. had testified about incidents of abuse including Brandenburg rubbing her breasts under her shirt. The prosecutor then listed the elements of first degree child molestation. To convict Brandenburg of first degree child molestation of E.W., the jury had to believe that Brandenburg had a sexual contact with E.W. The jury had to make a decision about whether the rubbing of a breast was for the purpose of sexual

---

[4] The italicized abiding belief language is optional. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 cmt. at 93-94 (4th ed. 2016) (WPIC).

[5] Although Brandenburg reviewed the prosecutor's presentation before closing argument, he did not then object to the two slides that he now contends were improper.

gratification. Immediately after defining *sexual contact*,[6] the prosecutor showed the jury a slide on which she had written, "Did sexual contact between defendant and [E.W.] occur?" with the answer, "**YES.**" Ex. 15 at 11. She also told the jury a sexual contact with E.W. had occurred. Thus, she argued, the State had proved beyond a reasonable doubt that a first degree child molestation had occurred, and the jury should return a guilty verdict for that charge.

Similarly, the prosecutor listed the elements of second degree child molestation with an emphasis on the sexual contact requirement. The prosecutor stated that L.B. had testified that Brandenburg rubbed her breast in a sexual motion. The prosecutor then showed the jury a slide that asked, "Did sexual contact between defendant and [L.B.] occur?" and answered, "**YES.**" Ex. 15 at 15. The prosecutor told the jury a sexual contact with L.B. had occurred and that meant that the State had proved a second degree child molestation beyond a reasonable doubt.

The jury found Brandenburg guilty of the first degree molestation of E.W. and the second degree molestation of L.B. and not guilty of first degree rape of E.W.

### III. SENTENCING

The trial court sentenced Brandenburg to 80 months to life for the first degree molestation conviction and to 41 months for the second degree molestation conviction. Brandenburg requested his appeal be at public expense, claiming that he had no real or personal property, no income, and $10,000 in debts and that he could not contribute any amount toward the expense of review. Brandenburg also requested waiver of legal financial obligations (LFOs). The trial court granted an order of indigency but imposed $800 in LFOs, including $200 in discretionary LFOs.

---

[6] Because the prosecutor read the slides for portions of her argument, it is apparent which slides correspond to her closing argument.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Brandenburg makes two prosecutorial misconduct arguments. We hold that his arguments fail.

A. STANDARD OF REVIEW AND APPLICABLE LAW

We review claims of prosecutorial misconduct to determine whether the defendant has proved the conduct was improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). A prosecutor has wide latitude to make arguments to the jury and draw reasonable inferences from the evidence. *Glasmann*, 175 Wn.2d at 704. We review a prosecutor's allegedly improper comments in the context of the entire argument. *Glasmann*, 175 Wn.2d at 704.

B. REASONABLE DOUBT BURDEN OF PROOF

Brandenburg argues that the prosecutor misstated the burden of proof when she stated that Brandenburg was "'presumed innocent, unless and until you believe [E.W. and L.B.], and if you believe them, you're satisfied beyond a reasonable doubt.'" Br. of Appellant at 6 (quoting 2 RP at 333). Brandenburg also contends that this argument improperly implied that the jury could acquit Brandenburg only if it disbelieved E.W. and L.B. We hold that the prosecutor's argument was proper.

It is prosecutorial misconduct to misstate the State's burden of proving guilt beyond a reasonable doubt. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). A prosecutor may not argue that in order to acquit a defendant, the jury must find the State's witnesses are lying or mistaken. *State v. Larios-Lopez*, 156 Wn. App. 257, 260, 233 P.3d 899 (2010) (quoting *State v.*

*Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996)). An argument that believing the victim means that the State has proved the defendant's guilt beyond a reasonable doubt does not misstate the burden of proof. *See Larios-Lopez*, 156 Wn. App. at 261-62.

In *Larios-Lopez*, the prosecutor explained that an abiding belief in the truth of the charge meant satisfaction beyond a reasonable doubt. 156 Wn. App. at 259. The prosecutor also told the jury that "'*if you believe [the victim] is telling the truth*, and you believe him to an abiding belief, I have proven to you beyond a reasonable doubt that the defendant is guilty of this crime.'" *Larios-Lopez*, 156 Wn. App. at 259 (emphasis added). We noted that this argument was made after the prosecutor had emphasized the State's burden of proof, and we determined that the quoted statement was not improper in light of the entire closing argument. *Larios-Lopez*, 156 Wn. App. at 261-62.

*Larios-Lopez* controls here. The prosecutor's argument that the jury would be satisfied beyond a reasonable doubt if it believed E.W. and L.B. immediately followed the prosecutor's explanation of reasonable doubt. The prosecutor read from the pattern instruction, telling the jury that it should be satisfied beyond a reasonable doubt if it had an abiding belief in the truth of the charge. Immediately after making the argument that Brandenburg challenges, the prosecutor reminded the jury that the State had the burden of proof and that "[t]he defense doesn't have to prove anything [because] [h]e's presumed innocent." 2 RP at 333. Thus, an evaluation of the argument in context reveals that the prosecutor did not misstate the burden of proof.

Brandenburg also contends that the prosecutor improperly argued that the jury could acquit Brandenburg only if it disbelieved E.W. and L.B. But the proposition that believing L.B.'s and E.W.'s testimony means finding that the State has proved its case beyond a reasonable doubt is

not tantamount to arguing that the jury may acquit only if it disbelieves L.B. At no point did the prosecutor argue that the jury had to disbelieve E.W. and L.B. to acquit Brandenburg. Accordingly, we hold that the prosecutor's argument was not improper and thus was not prosecutorial misconduct.

### C. PERSONAL OPINION ON GUILT

Brandenburg contends that the prosecutor improperly expressed a personal opinion as to Brandenburg's guilt when she showed the jury two slides that answered "'**YES**'" to the question, "'Did sexual contact between [Brandenburg] and [E.W. or L.B.] occur?'" Br. of Appellant at 9 (quoting Ex. 15 at 11, 15). We disagree.

It is improper for a prosecutor to express an "individual opinion of the defendant's guilt, independent of the evidence actually in the case." *Glasmann*, 175 Wn.2d at 706. But a prosecutor may express an opinion that is based upon or deduced from testimony in the case. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006) (quoting *State v. Armstrong*, 37 Wash. 51, 54-55, 79 P. 490 (1905)).

To determine whether a prosecutor's statement is an improper expression of an independent personal opinion or an appropriate opinion based on the evidence, we review the challenged comments in context. *McKenzie*, 157 Wn.2d at 53. In *McKenzie*, our Supreme Court noted that "'[i]t is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion.'" 157 Wn.2d at 53-54 (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)). However, statements do not express a personal opinion unless "'it is *clear and unmistakable that counsel is not arguing an inference from the evidence*.'" *McKenzie*, 157 Wn.2d at 54 (quoting *Papadopoulos*, 34 Wn. App. at 400).

Here, in closing, the prosecutor discussed the elements of child molestation, telling the jury that to convict Brandenburg for either of the molestation charges, it had to believe that he had sexual contact with either E.W. or L.B. Immediately before the prosecutor showed the jury the challenged slides, she linked the slides to the evidence presented. Before the prosecutor showed the slide that stated a sexual contact with E.W. had occurred, the prosecutor reminded the jury that E.W. had testified that Brandenburg rubbed her breasts under her shirt. And before the prosecutor showed the slide stating a sexual contact with L.B. had occurred, the prosecutor reminded the jury that L.B. had testified that Brandenburg rubbed her breast in a circular motion. Thus, in context, the prosecutor's answer of "**YES**" to the question, "Did sexual contact . . . occur" is an appropriate opinion drawn from the evidence presented and is not an improper expression of personal opinion. Ex. 15 at 11, 15. We hold that Brandenburg fails to establish prosecutorial misconduct.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Brandenburg contends that there were four instances of ineffective assistance of counsel based on counsel's failure to object. We reject Brandenburg's contentions.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

Whether there was ineffective assistance of counsel is a mixed question of fact and law that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. *Jones*, 183 Wn.2d at 339 (quoting *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993)). Where a claim of ineffective assistance rests on failure to object at trial, "a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Prejudice exists when there is a reasonable probability that but for the deficient performance, the outcome would have differed. *Jones*, 183 Wn.2d at 339 (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We presume that counsel is effective, and the defendant must show that counsel had no legitimate strategic or tactical reason for the challenged action. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). We need not address both prongs of the test if the defendant's showing on one prong is insufficient. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

## B.  INADMISSIBLE HEARSAY

Hearsay is a statement made out of court and offered for the truth of the matter asserted. ER 801(c). If evidence is not offered for the truth of the matter asserted, it is not hearsay. *State v. Rice*, 120 Wn.2d 549, 564, 844 P.2d 416 (1993).

### 1.  L.B.'S DISCLOSURE TO OFFICER CASSIDY

Brandenburg argues that his counsel should have objected when Officer Cassidy testified that L.B. had disclosed a sex offense. Brandenburg claims that this was ineffective assistance of counsel because the statement was hearsay not within any exception. These arguments fail.

In *State v. Chenoweth*, the court held that a child's disclosure of a sex offense was not hearsay because the testimony only revealed how the allegations came to the attention of law enforcement and did not reference any specifics of the allegations. 188 Wn. App. 521, 533-34, 354 P.3d 13, *review denied*, 184 Wn.2d 1023 (2015). Thus, the evidence was not offered for the truth of the matter asserted—that sexual abuse had occurred. *Chenoweth*, 188 Wn. App. at 534.

The testimony Brandenburg claims was inadmissible hearsay was Officer Cassidy's answer of "[y]es" to the prosecutor's question, "[D]id [L.B.] disclose a sex offense?" 2 RP at 212.

The State's questioning of Officer Cassidy about L.B.'s disclosures only established how the allegations came to the attention of law enforcement and did not reference any specifics. Officer Cassidy's testimony did not identify the perpetrator of the offense or the details that L.B. disclosed. Thus, the evidence was not offered for the truth of the matter asserted and was not hearsay. *See Chenoweth*, 188 Wn. App. at 533-34.

Because the testimony that L.B. disclosed a sex offense was not hearsay, the trial court would have overruled an objection to the testimony on hearsay grounds. Accordingly, it was not deficient performance not to object to this testimony. We hold that Brandenburg's ineffective assistance of counsel claim regarding Officer Cassidy's testimony about L.B.'s disclosure fails.

2.      E.W.'S DISCLOSURE TO OFFICER CASSIDY

        a.      NOT DEFICIENT PERFORMANCE

Brandenburg argues that defense counsel should have objected on the basis of hearsay to Officer Cassidy's testimony describing the "'concerning things'" E.W. told him. Br. of Appellant at 13 (quoting 2 RP at 220-21). Again, we disagree.

Legitimate trial tactics or strategy do not constitute deficient performance and cannot form the basis for an ineffective assistance of counsel claim. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 694, 709, 327 P.3d 660 (2014).

At trial, E.W.'s testimony was inconsistent. She indicated on cross-examination that she remembered telling Officer Cassidy only about Brandenburg "touch[ing] her" in 2007. 1 RP 8/5/2015 at 97. But on redirect examination, E.W. said that she did not tell Officer Cassidy about "all the touching" and told him only about Brandenburg taking her shirt off. 1 RP at 108. To remedy these inconsistencies, the State asked Officer Cassidy about the "concerning" things E.W.

13

had disclosed to him. 2 RP at 220. Officer Cassidy testified that E.W. had told him that Brandenburg had taken off her shirt one time and then never again sexually abused her.

While introduced to remedy E.W.'s inconsistent testimony, Officer Cassidy's testimony arguably undermined E.W.'s credibility by drawing attention to her inconsistencies and revealing that she had told him only about a lesser instance of misconduct. Thus, defense counsel could reasonably have made a strategic choice not to object because Officer Cassidy's testimony was helpful to Brandenburg. Because the lack of an objection can be characterized as a legitimate trial strategy, Brandenburg cannot establish deficient performance.[7]

## C. EXPERT TESTIMONY

Brandenburg argues that it was ineffective assistance of counsel not to object to the allegedly impermissible expert testimony of Detective Ivanovich. He argues that Detective Ivanovich improperly testified about the general behavior of abused children. He contends that the allegedly impermissible expert testimony prejudicially bolstered L.B.'s and E.W.'s testimony. Even assuming without deciding that there was error, his argument does not prevail.

Brandenburg fails to explain how but for the alleged deficient performance, the outcome of the trial would have been different. He argues only that there is a reasonable probability that some jurors were influenced by the allegedly inadmissible evidence and the prosecutor's misconduct. Based on the record before us, we disagree that but for counsel's failure to object to Ivanovich's testimony, the outcome of the trial would have been different.

---

[7] We need not address prejudice when there is no deficient performance. *See Kyllo*, 166 Wn.2d at 862.

14

### D. PROSECUTORIAL MISCONDUCT

Brandenburg claims that it was ineffective assistance of counsel not to object to both the prosecutor's closing argument that if the jury believed E.W. and L.B. that it should convict and to the sexual contact slides. But as discussed in section I of the analysis, *supra*, neither of Brandenburg's prosecutorial misconduct arguments has any merit. Brandenburg cannot establish that the challenged conduct was misconduct because it was not improper. Thus, Brandenburg cannot establish that it was deficient performance for his counsel not to object to the alleged misconduct.

In conclusion, we hold that Brandenburg's ineffective assistance of counsel challenges are meritless.

### III. REASONABLE DOUBT INSTRUCTION

Brandenburg argues that the trial court committed structural error when it instructed the jury that an abiding "'belief in the truth of the charge'" meant that the jury was satisfied "beyond a reasonable doubt." Br. of Appellant at 16-17 (quoting CP at 21). Brandenburg asserts that this language encouraged the jury to undertake an improper search for the truth, as in *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012).[8] But we have considered and rejected the argument that the abiding belief in the truth of the charge sentence has a similar effect to the improper remarks in *Emery*. *State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270 (2016). We decline to revisit our holding in *Jenson*.

---

[8] In *Emery*, it was improper for a prosecutor to exhort the jury to "'speak the truth'" through its verdict. 174 Wn.2d at 751, 760. The jury's job is to determine whether the State has proved the charges beyond a reasonable doubt and not to determine the truth of what happened. *Emery*, 174 Wn.2d at 760.

## IV. SINGLE-SUBJECT AND SUBJECT-IN-TITLE REQUIREMENTS

Brandenburg argues that the CPA, which contains a provision elevating first degree child molestation to a class A felony, violated the single-subject and subject-in-title requirements of article II, section 19 of the Washington Constitution. *See* LAWS OF 1990, ch. 3, § 902. Therefore, he argues that we should vacate his sentence for first degree molestation of E.W. and remand for resentencing. Because the CPA did not violate either requirement, we affirm Brandenburg's first degree molestation sentence.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

We review de novo an allegation of a constitutional violation. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). We presume a statute is constitutional; the party challenging a statute's constitutionality bears the burden of proving the statute's unconstitutionality beyond a reasonable doubt. *State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012).

Article II, section 19 provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Article II, section 19 embraces two distinct provisions: the single-subject requirement and the subject-in-title requirement. *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 207, 11 P.3d 762, 27 P.3d 608 (2000).

### B. SINGLE-SUBJECT REQUIREMENT

Brandenburg argues that the CPA violated the single-subject requirement because it "addressed a variety of unrelated general topics." Br. of Appellant at 21. We disagree.

1. ARTICLE II, SECTION 19

Analysis under the single-subject requirement is a two-step inquiry. First, we determine whether the title of the act is general or restrictive. *Pierce County v. State*, 144 Wn. App. 783,

819-20, 185 P.3d 594 (2008). General titles are "'broad, comprehensive, and generic.'" *Pierce County*, 144 Wn. App. at 820 (quoting *City of Burien v. Kiga*, 144 Wn.2d 819, 825, 31 P.3d 659 (2001)). "A general title will be given a liberal construction." *State v. Broadaway*, 133 Wn.2d 118, 126, 942 P.2d 363 (1997). Second, we determine whether a rational unity exists among the subjects addressed in the act. That is, the act's subjects must be reasonably connected to each other and to the act's title. *Pierce County*, 144 Wn. App. at 821.

2.     GENERAL TITLE

First we determine whether the CPA's title is general or restrictive. *See Pierce County*, 144 Wn. App. at 819-20. The title of the CPA, which elevated first degree molestation to a class A felony, is "COMMUNITY PROTECTION ACT": "AN ACT Relating to criminal offenders."[9] LAWS OF 1990, ch. 3. As Brandenburg notes, that title is general. It is broad, comprehensive, and generic. *See State v. Haviland*, 186 Wn. App. 214, 220, 345 P.3d 831, *review denied*, 183 Wn.2d 1012 (2015). Thus, the general title will be given a liberal construction. *See Broadaway*, 133 Wn.2d at 126.

In *Haviland*, the same arguments were made that Brandenburg makes here. We stated that the CPA's title was "general." 186 Wn. App. at 220. While the defendant in *Haviland* challenged his convictions under the elevated penalty for second degree rape of a child, our holding regarding the constitutionality of the CPA is nonetheless controlling here. *See Haviland*, 186 Wn. App. at 216.

---

[9] The CPA's full title is "COMMUNITY PROTECTION ACT": "AN ACT Relating to criminal offenders," followed by a comprehensive list of all statutes amended and chapters to which new sections were added. LAWS OF 1990, ch. 3.

3.      RATIONAL UNITY

Next we determine whether there is a rational unity—a reasonable connection—among the CPA's subjects and between the CPA's subjects and its title. *See Pierce County*, 144 Wn. App. at 821. Brandenburg argues that the CPA is invalid because the following subjects are unrelated: mental illness, certification of sex offender treatment providers, civil commitment of sexually violent predators, and treatment and supervision of abusive parents removed from the home by court order. We disagree.

In *Haviland*, the defendant argued that the same four groups of provisions violated the single-subject requirement. 186 Wn. App. at 220. There, we held that these subjects were all reasonably connected with each other and to the CPA's title because they all related to criminal offenders and the CPA's subject (criminal offenders and community protection). 186 Wn. App. at 220-21. Because *Haviland* controls, we hold that Brandenburg's single-subject argument fails.

C. SUBJECT-IN-TITLE REQUIREMENT

Brandenburg argues that the CPA violated the subject-in-title requirement because the CPA "embraced numerous subjects that do not fall within [its] general title." Br. of Appellant at 23. We disagree.

Relying on the same CPA sections as Brandenburg does here, the defendant in *Haviland* argued that the CPA violated the subject-in-title requirement. 186 Wn. App. at 221. We held that

the CPA did not violate the subject-in-title requirement because the CPA's title "plainly notifies readers that the [CPA's] contents relate to criminal offenders." *Haviland*, 186 Wn. App. at 222. Because we have already considered and rejected the argument that Brandenburg makes here, we hold that Brandenburg's subject-in-title rule violation argument fails.[10]

## V.  APPELLATE COSTS

Brandenburg requests that no appellate costs be assessed against him. We grant his request.

RAP 14.1(a) provides that the appellate court determines costs. Under RAP 15.2(f), we presume a party remains indigent unless the trial court finds the party's financial condition has improved. We have broad discretion to grant or deny appellate costs to the substantially prevailing party. *See* former RCW 10.73.160(1) (1995). Ability to pay is a factor in the exercise of that discretion. *State v. Sinclair*, 192 Wn. App. 380, 389, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016).

The trial court found Brandenburg indigent based on his claim that he had no property or income and had $10,000 in debt. The trial court sentenced Brandenburg to 80 months to life in confinement. Because this record suggests that Brandenburg does not have the present or future ability to pay, we direct the commissioner not to award appellate costs to the State.

---

[10] Brandenburg also argues, assuming the CPA violated the subject-in-title or single-subject requirement, that the 1994 act amending the first degree child molestation statute "did not cure the errors in" the CPA. Br. of Appellant at 25. Because the CPA does not violate subject-in-title or the single-subject requirement, we need not address this argument.

No. 48059-0-II

We affirm Brandenburg's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.